Anthony DUKE, Appellant,

v.

**POWER ELECTRIC AND HARDWARE COMPANY, Appellee.**

No. 13–83–170–CV.

Court of Appeals of Texas, Corpus Christi.

May 31, 1984.

Larry D. Woody, Victoria, for appellant.

Fred Turner, Port Lavaca, for appellee.

Before UTTER, KENNEDY and GON-ZALEZ, JJ.

## OPINION

UTTER, Justice.

This is an appeal from a judgment rendered in favor of appellee in a suit on an open account. The trial court's judgment, which was based upon the jury verdict, awarded appellee the sum of $7,125.77 less an offset of $33.00, plus $2,000.00 in attorney's fees.

Pursuant to an oral contract, appellee Power Electric and Hardware Company (Power Electric), acting through its President, Edward Power (Power), agreed to perform certain electrical contracting work relating to the installation of grain storage tanks on appellant Duke's farm property in Calhoun County. Edward Power testified that he had estimated the cost of labor and materials to be "around fifteen thousand dollars" but that "it might be twelve" or "it also may be more." Appellant Duke (Duke) testified that Edward Power had given estimates ranging from ten to twelve thousand dollars to Duke or his wife and that the only written estimate was for $15,-000.00. Upon completion of the work, the final cost of the finished job was determined to be $22,125.77. Appellant made $15,000.00 in payments, claiming that was all that he owed and thereby leaving a sum of $7,125.77 unpaid on the finished job. Some months later, after appellant refused to pay the unpaid amount, appellee, through its former attorney, filed suit against appellant on the open account. Soon after filing the suit on the open account, appellee filed for prejudgment garnishment of $9,125.77 of funds in appellant's bank account at the Victoria Bank & Trust. Because the seizure of funds in appellant Duke's bank account was done without notice of any kind, the prejudgment garnishment writ was subsequently dismissed. Also, a mechanic's and materialmen's lien and a lis pendens were filed by appellee Power Electric against appellant's farm property. In taking Power's deposition in preparation for trial, appellant Duke discovered that a permanent ledger card, which itemized appellant's account in appellee's business records, contained notations for "interest" or "int." in an amount which would equal a charge of interest at the rate of 1½ percent per month (or 18 percent per annum). Appellant Duke then counterclaimed for usury, wrongful garnishment and slander of title (resulting from the wrongful filing of the lis pendens).

Since it was established at trial that there was no agreement between the parties to pay interest on the open account, an obligation to pay interest at the rate of 6 percent per annum arose by implication of law under Art. 5069–1.03. *Preston Farm & Ranch Supply v. Bio-Zyme Enterprises,*

625 S.W.2d 295 (Tex.1981); *Windhorst v. Adcock Pipe and Supply*, 547 S.W.2d 260 (Tex.1977).

In his first point of error, appellant challenges the legal and factual sufficiency of the evidence to support a certain jury finding upon which the judgment for appellee was based. The jury finding, of which appellant complains, concerns whether appellee "charged" appellant an 18 percent per annum interest rate:

SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that Power Electric and Hardware Company charged Anthony Duke an 18% per annum interest rate?

ANSWER: "Yes" or "No"

ANSWER: *No*

You are instructed that "charges" or "charging" is defined as the act of placing something to the account of a debt; to debit, as to charge a sum to one. A charge can be the debiting of an amount due or by an act constituting a demand for payment.

Appellee, on appeal, makes no complaint of the trial court's instruction. Appellant argues that, contrary to the jury's finding to Special Issue No. 4, the charging of usurious interest was established as a matter of law or, in the alternative, that the jury finding that usurious interest was not "charged" is against the great weight and preponderance of the evidence. In considering appellant's point of error, we will follow the well established test set forth in *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965); *In Re Kings Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); *Allied Finance Company v. Garza*, 626 S.W.2d 120 (Tex. Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361 (1960).

The evidence presented at trial regarding the "charging" of interest as defined in the above instruction to Special Issue No. 4 is summarized as follows: Edward Power, President of appellee Power Electric, testified that there was no agreement between the parties regarding interest to be paid;

however, each invoice sent by Power Electric to Duke contained a legend which stated "our service charge on past due accounts is a periodic rate of 1½% per month computed on the previous months unpaid balance which is an annual rate of 18%." Power testified that his secretary routinely calculated interest on the accounts of all customers whose bills are thirty days past due and that such interest is calculated at 1½ percent per month which is equivalent to 18 percent per annum. Power further testified that, every time interest was charged, interest was entered in the company's books and records. As confirmed by the testimony of Power, the permanent ledger card, on which the business record of Duke's account was maintained, reflected a principal amount of $7,281.40 ($7,125.77 (Inv. No. 46093) plus $155.63 (Inv. No. 45234)), plus seven monthly notations of $109.22 as "interest" or "int" (for a total of $764.54 in interest). The total of the principal amount of $7,281.40 plus the seven monthly notations of interest was $8,045.94. Power repeatedly admitted that the seven monthly notations of $109.22 were for "interest" or "service charge."

In attempting to explain his use of the term "service charge," Power testified as follows:

Q  All right, If you would, explain to me what all the service charge covers. You said that it covers just for the fact that you have to carry it on your books.

A  It's added bookkeeping, it's added work and...

Q  Do you have to mail out statements every month?

A  Yes, sir.

\*　\*　\*　\*　\*　\*

Q  (By Mr. Turner) Are there any others that you can think of, Mr. Power?

A  Yes, sir, when we have a lot of accounts receivable we have to go down to the bank and pay whatever rate they're charging us which is most of the time eighteen, nineteen, twenty, twenty-one percent.

Neither Power, nor any other witness attempted to pro rate what of Power Electric's costs were attributable to "service charge" or what percentage of the seven monthly notations for "interest" or "int." on the ledger card was attributable to "service charge." The ledger card shows a debiting of amounts for interest in excess of the 6 percent per annum legal rate of interest allowed under Art. 5069–1.03; therefore, we hold that, under the trial court's instruction that *"A charge can be the debiting of an amount due or by an act constituting a demand for payment,"* the jury's finding to Special Issue No. 4 was against the great weight and preponderance of the evidence. Appellant's first point of error is sustained.

■ In his second, seventh and eighth points of error, appellant complains of certain evidentiary rulings of the trial court. First, appellant contends that the trial court erred in failing to sustain his hearsay objection to appellee's counsel's question regarding whether Power, as President of appellee Power Electric, was assured by his former attorney that the issuing of a writ of garnishment was done to protect appellee's interest. Where the question is whether a party has acted prudently, wisely or in good faith, information on which he acted is original and material evidence and not "hearsay." *McAfee v. Travis Gas Corp.,* 137 Tex. 314, 153 S.W.2d 442 (1941). Appellant's first contention is without merit.

■ Secondly, appellant contends that, because Power had responded to questions which were asked by appellee's trial counsel about conversations that he had with his former attorney relating to the issuance of the writ of garnishment, appellee completely waived its attorney-client privilege and that the trial court erred in not allowing appellant's counsel to question Power regarding any conversations he may have had with his former attorney concerning the charging of usurious interest. We disagree with appellant's second contention. The asking of the question to establish the motive or intent of a party when acting on

advice of counsel is not the type of question that would result in a complete waiver of the attorney-client privilege. Appellant has cited no cases which support his contention nor have we been able to find any case authority which holds that, under these circumstances, appellee completely waived its attorney-client privilege. We hold that the trial court did not err in precluding such questioning. Appellant's second, seventh and eighth points of errors are overruled.

■ In his third point of error, appellant asserts that the jury should have found that the wrongful garnishment proceedings resulted in exemplary damages as a matter of law or, in the alternative, that the jury's finding that Power Electric acted with probable cause and without malice, upon which the exemplary damages issue was predicated, is against the great weight and preponderance of the evidence. The jury found the actual damages caused by the wrongful garnishment to be $33.00, apparently the amount of interest at the legal rate on the money wrongfully detained. However, relating to exemplary damages, the jury found appellee acted *with* probable cause and *without* malice in the filing of the writ of garnishment; and, since the exemplary damages issue was predicated upon a finding that appellee acted *without* probable cause and *with* malice, the jury did not answer the exemplary damages issue. Power testified that he consulted with his attorney and that his attorney recommended the filing of the garnishment proceedings. In addition, Power testified that, as soon as it was discovered that the writ of garnishment had been wrongfully issued, a letter was sent by his former attorney to appellant's attorney acknowledging the error and offering to pay for any actual damages caused by the wrongful issuance of the writ of garnishment. We hold that there is sufficient evidence to support the jury's finding that appellee acted *with* probable cause and *without* malice; therefore, in accordance with the conditional submission of the exemplary damages issue, the jury properly did not answer the

exemplary damages issue. Appellant's third point of error is overruled.

■ Likewise, in his fourth point of error, appellant asserts that the trial court erred in not finding as a matter of law that the allegedly wrongful filing of the lis pendens resulted in actual and exemplary damages or, in the alternative, that the jury's finding of no actual damages, upon which the exemplary damages issue was predicated, is against the great weight and preponderance of the evidence. The jury found that no actual damages were sustained by appellant by reason of the filing of the lis pendens; and, since the exemplary damages issue was predicated upon a finding of actual damages, the jury properly did not answer the exemplary damages issue. We have examined the entire record and find that the evidence is sufficient to support the jury's finding that no actual damages resulted to appellant by the filing of the lis pendens. Appellant's fourth point of error is overruled.

In his fifth point of error, appellant asserts that the trial court erred in overruling appellant's objection to certain jury argument by appellee's counsel because such argument was a misstatement of the law and was inflammatory.

■ In his jury argument, appellee's counsel gave his interpretation of Special Issue No. 4, which inquired whether Power Electric "charged" Duke an 18 percent per annum rate of interest. Appellant's counsel objected alleging that appellee's counsel was misstating the law and deviating from the court's charge to the jury. The record reflects that the trial court did not rule on appellant's objection; therefore, nothing is presented for review. *Hanover Insurance Co. v. Peyson*, 373 S.W.2d 701 (Tex.Civ. App.—Fort Worth 1963, no writ). Nevertheless, the trial court did instruct the jury that it would receive the law from the court. If there was any error, we hold that it would have been cured by the trial court's instruction. *See Otis Elevator Co. v. Wood*, 436 S.W.2d 324 (Tex.1968); *Houston Light and Power Co. v. Fisher*, 559 S.W.2d 682 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd. n.r.e.).

Regarding appellant's remaining complaints of appellee's counsel's jury argument, there was either no objection on the grounds asserted in this appeal or the trial court sustained appellant's objections. No error is shown. Appellant's fifth point of error is overruled.

■ In his sixth point of error, appellant asserts that the trial court erred in overruling his challenge for cause of a Juror Townley who allegedly admitted bias in favor of appellee. TEX.REV.CIV.STAT. ANN. art. 2134(4) (Vernon 1964) provides that any person who has a bias or prejudice in favor of or against either of the parties in a case is disqualified to serve as a juror. It appears from Juror Townley's voir dire examination that the Juror Townley's son-in-law was Power's brother-in-law and that she had known Power all of her life. Juror Townley's testimony was equivocable regarding her possible bias towards Power up until the time the court finally asked her the following questions:

THE COURT: Due to the fact that you know Mr. Power or that your in-laws are related to his in-laws would that have, knowing him or that relationship that you described, would that influence you if you sat on a jury one way or the other?

JUROR TOWNLEY: I really don't think so.

THE COURT: Would it embarrass you if you are sitting on a jury and after having heard all the evidence would it embarrass you to find against Mr. Power?

JUROR TOWNLEY: No.

THE COURT: In any way?

JUROR TOWNLEY: No.

If bias or prejudice is established, then the juror is disqualified by operation of law; however, whether a juror is biased or prejudiced may be a factual determination to be made by the Court. *Swap Shop v. Fortune*, 365 S.W.2d 151 (Tex.1963). The trial court found that the prospective juror was not disqualified, and we, as an appellate court, are required to consider the

evidence in the light most favorable to that ruling. *Compton v. Henrie,* 364 S.W.3d 179 (Tex.1963); *Speer v. Continental Oil Company,* 586 S.W.2d 193 (Tex.Civ.App.—Eastland 1979, writ ref'd n.r.e.). The trial court had the opportunity to observe the prospective juror as she testified, and it was in the best position to evaluate the prospective juror's capacity for fairness and impartiality. We have reviewed the entire voir dire examination of Juror Townley and nowhere in the record is there testimony that she had a fixed bias in favor of appellee. The trial court's finding that the juror was not biased or prejudiced should not be disturbed. *See Swap Shop* at p. 154; *Speer* at p. 195. Appellant's sixth point of error is overruled.

As previously stated, appellant's first point of error is sustained and the judgment of the trial court is REVERSED and REMANDED. All costs are assessed against appellee.