**Lee H. SEALE, Individually and as Administratrix of the Estate of Allan W. Seale, Appellant,**

**v.**

**WINN EXPLORATION COMPANY, INC., Appellee.**

**No. 13–86–431–CV.**

Court of Appeals of Texas, Corpus Christi.

April 16, 1987.

Rehearing Denied June 25, 1987.

Jorge C. Rangel, Patterson, Rangel & Chriss, Corpus Christi, for appellant.

Winstol D. Carter, Jr., Sarah B. Duncan, Fulbright & Jaworski, Houston, Richard A. Hall, Gary, Thomasson, Hall & Marks, Corpus Christi, for appellee.

Before NYE, C.J., and KENNEDY and DORSEY, JJ.

## OPINION

KENNEDY, Justice.

Appellant brought a wrongful death action, Tex.Civ.Prac. & Rem.Code Ann. § 71.002 (Vernon 1986), and a survival statute action, Tex.Civ.Prac. & Rem.Code Ann. § 71.021 (Vernon 1986), against the appellee. Pursuant to the jury's answers to the special issues, the trial court entered a take-nothing judgment against the appellant. Appellant brings nine points of error. We affirm the judgment of the trial court.

Allan Seale, appellant's adult son and the son-in-law of Charles Winn, and his wife, Sissy Winn Seale, were killed in an airplane crash while en route to Charles Winn's ranch. Charles Winn is the president of Winn Exploration Company, and Winn Exploration owned the jet airplane that crashed, killing appellant's son. Allan Seale and his wife were flying from Corpus Christi to the Winn ranch, just outside of Eagle Pass, for the Easter weekend when the jet crashed approximately two miles away from the Winn ranch airport. The jury found that Winn Exploration's pilots were negligent in failing to monitor the altimeter and the vertical speedmeter. The jury also found that such negligence was the proximate cause of the "occurrence in question." However, the jury answered zero as the amount that would compensate appellant for damages.

Appellant, by her ninth point of error, complains that the trial court erred in excluding the expert testimony of Dr. Dillman. Appellant sought to have Dillman, an economist, estimate "the value of the loss, love, affection, companionship and society as between the son and his mother."

In order for the exclusion of evidence to constitute reversible error, this Court must determine that error occurred, and that the error was harmful and calculated to cause, and probably did cause, the rendition of an improper judgment. *Howard v. Faberge, Inc.*, 679 S.W.2d 644, 647 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); Tex.R.App.P. 81(b).

Dillman testified, by bill of exception, that the present value of appellant's loss for society and comfort was $91,910.00. Dillman arrived at this figure by using a base of $9.50, the hourly average income of a psychiatrist, multiplied times one hour per day over the life expectancy of appellant. Dillman admitted that he cannot make a determination about the quality of love, or the quality of the relationship between appellant and her son.

Expert testimony is called upon whenever peculiar skill and judgment, applied to a particular subject, are required in order to explain results or trace their causes. *Perry v. Texas Municipal Power Agency*, 667 S.W.2d 259, 264 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). "Expert opinions are admitted in evidence on the theory that the expert, by reason of study, has special knowledge which jurors do not possess, and is therefore better able to draw conclusions from fact." *Id.; see* Tex.R.Evid. 702. The trial court properly excluded Dillman's testimony. The average hourly income of a psychiatrist is not relevant to the ultimate issue to be determined by the jury; the value of the loss, love, affection, companionship and society as between the son and his mother. Therefore, Dillman's testimony, based on the hourly average income of a psychiatrist, possessed no traces of special knowledge which jurors do not possess in deciding this issue. Further, the trial court allowed Dillman, the economist, to testify generally with regard to computing present value without basing it upon a specific element of damages. We overrule appellant's ninth point of error.

Appellant, by her first eight points of error, complains of the legal and factual sufficiency of the evidence to support the jury's answers to the damages special issue. The jury answered "zero" as the sum of money to compensate appellant for pecuniary loss, loss of society, and past and future mental anguish. Appellant complains that the evidence conclusively established the damages for each of the above elements, or that, in the alternative, the jury's answers are against the great weight and preponderance of the evidence. In considering a legal sufficiency or factual

sufficiency point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex. 1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex. 1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

With respect to pecuniary loss, the jury considered the care, maintenance, support, services, advice, counsel, and reasonable contributions of a pecuniary value that appellant would have received from her son. Although appellant testified that her son gave her $40.00 on the day of his death, this was the only testimony regarding specific amounts of financial contributions made by her son. Appellant testified that her son helped her financially when he could afford it, but was not any more specific. Appellant admitted that her son was not "handy" around the house and did no housework or yardwork for her.

■■■ The appellant had the burden of proof and persuasion as to pecuniary loss. Clearly, there was not sufficient evidence before the jury that would enable them to determine the contributions Allan Seale would have made to appellant.

Regarding loss of society, love, comfort, and companionship, appellant testified that her son often ate lunch with her, was her only child residing in Corpus Christi, which is appellant's residence, and that her son visited with her by phone at least once a day. Further, appellant testified that Allan was her favorite son, as they had a special relationship that she did not share with her other children. Appellant also testified that her other children visited her, as they were the day of the accident, and that they had been active in urging her to participate in family outings since Allan's death.

Dr. Feltoon, a clinical psychologist, testified that appellant suffered from depression and painted a bleak picture of a woman withdrawn from society due to the death of her son. However, appellant's own testimony was not so tragic and, although she may not travel as frequently as before Allan's death, she still visits with friends and family. The evidence indicates that appellant sought Dr. Feltoon's help sixteen months after the accident, upon the advice of her attorney, and that appellant was not regular in keeping her appointments.

■■■ The damages special issue inquired, "What sum of money ... would fairly and reasonably compensate Lee H. Seale for her damages, *if any*, resulting from the death of Allan Seale?" (emphasis ours). This issue is multifarious in that it requires the jury to consider whether or not the plaintiff was injured, and, if so, the amount of compensation under one special issue.[1] The evidence indicates that, near to the time of Allan's death, appellant was in the midst of a divorce, suffered the death of a brother-in-law that was "like a father" to her, suffered the death of a sister, and was forced to manage another sister's affairs who was institutionalized for a brain disorder. All of these circumstances may have been a factor in causing any depression suffered by the appellant. Although there is an abundance of evidence that appellant suffered some mental anguish, there is sufficient evidence to support a jury finding that appellant's injury was not a result of Allan Seale's death, but rather the numerous other causes listed above.

■■■ "The credibility of witnesses and the weight to be given their testimony are questions for the jury.... This is particularly true with regard to the testimony of witnesses interested in the outcome of the litigation." *Rodriguez v. Kvasnicka*, 710 S.W.2d 724, 726 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). Matters such as

---

1. We note, although this is unassigned error, that neither party requested, or objected to the lack of, a special issue inquiring, "As a result of Allan Seale's death, did Lee Seale sustain an injury?" *See* 3 State of Bar of Texas, Texas

Pattern Jury Charges PJC 80.01 (1982). The comment to PJC 80.01 states that this issue, and an appropriate definition of injury, are necessary if there is a dispute concerning whether the plaintiff was injured.

mental anguish and loss of society are necessarily speculative, and it is peculiarly within the province of the jury to resolve these matters and set the amount of such damages. *Id.* at 727. The complaints are subjective in nature and not readily disputable by the defense. Further, the jury had the benefit of observing the appellant as she testified about the relationship she shared with her son regarding love, comfort, society and companionship. We will not substitute our judgment for that of the jury, as to the amount, or the existence, of these damages in this case. The jury's findings are not against the great weight and preponderance of the evidence. We overrule appellant's first eight points of error.

The judgment of the trial court is affirmed.