**CELOTEX CORPORATION, Appellant,**

v.

**Shirley TATE, Individually, as Executrix of the Estate of James Fisk Tate, et al., Appellees.**

**No. 13–89–444–CV.**

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 1990.

Rehearing Overruled Sept. 27, 1990.

Robert Arredondo, Donald Verplancken, Thomas W. Taylor, Elizabeth M. Thompson and Randa L. Duncan, Butler & Binion, Houston, for appellant.

B. Mills Latham, Law Offices of B. Mills Latham, Corpus Christi, Stanley R. Watson, Law Offices of Stanley R. Watson, P.C., Quanah, W. James Kronzer, Houston, for appellees.

Before NYE, C.J., and KEYS and BENAVIDES, JJ.

## OPINION

KEYS, Justice.

Appeal is taken from the jury trial of a toxic tort case. Appellees, the heirs of James Tate's estate, brought suit against defendants Union Carbide, George Rowley, Inc., Celotex Corp. and others. Appellees alleged that each of the defendants sold or supplied raw asbestos to Tate's employer and that the defendants' failure to warn of the dangers involved in handling asbestos resulted in Tate's unsafe exposure, proximately causing his death. Before trial, all defendants, except the three mentioned above, were released by appellees. During trial, Union Carbide settled for $900,000.00. Thereafter, judgment was entered against the remaining defendants, George Rowley, Inc. and Celotex, on a jury verdict awarding appellees both actual and punitive damages. The sole appellant is Celotex, and it asserts eleven points of error. We affirm the trial court's judgment.

James Tate died of malignant pleural mesothelioma (cancer of the lining of the lung) allegedly contracted by inhalation of the defendants' asbestos products containing chrysotile asbestos fibers. Over a period of almost thirty years, Tate was employed in various capacities at a wallboard and plaster plant in Acme, Texas. One of his duties at the Acme plant involved the mixing of kalite, a sound proofing material. During the mixing process, various dry materials, including asbestos, were poured into a large mixer, stirred and then sacked. The evidence revealed that Tate unloaded sacks of raw asbestos from boxcars, placed the sacks on a pallet, opened them, poured the asbestos into a hopper, scooped it from the hopper onto a scale, and carried it to the mixer. Tate also worked as an electrician at the plant, and the evidence reflected that, in this capacity, he was again repeatedly exposed to diffused asbestos fibers.

By its first two points of error, Celotex claims that the trial court erred when it admitted the testimony of two expert witnesses, Dr. Everett Dillman and Dr. Barry Castleman. Before discussing the merits of Celotex' arguments, we set forth the general rules regarding expert testimony and the preservation of error in the trial court.

A witness who, by his knowledge, skill, experience, training or education, has specialized knowledge that will assist the trier of fact in understanding the evidence or in determining a fact in issue may express an opinion about the matter. *Trailways, Inc. v. Clark*, 794 S.W.2d 479 (Tex. App.—Corpus Christi, n.w.h.); *DeLeon v. Louder*, 743 S.W.2d 357, 359 (Tex.App.—Amarillo 1987), *writ denied*, 754 S.W.2d 148 (Tex.1988); Tex.R.Civ.Evid. 702. There are, however, no definitive guidelines for determining the knowledge, skill or experience required of a particular witness when testifying as an expert; it is within the trial court's discretion, and the court's determination will not be disturbed absent a clear abuse of that discretion. *Trailways*, 794 S.W.2d at 483; *DeLeon*, 743 S.W.2d at 359.

To preserve the right to complain on appeal about the admission of evidence at trial, a party must have objected at the time the evidence was offered, the objection must have been specific enough to enable the trial court to understand the precise nature of the error alleged, and the party must have obtained a ruling on its objection. *MBank Dallas N.A. v. Sunbelt Mfg., Inc.*, 710 S.W.2d 633, 638 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *see also Guzman v. Soliz*, 748 S.W.2d 108, 111 (Tex.App.—San Antonio 1988, writ denied); *Duke v. Power Elec. and Hardware Co.*, 674 S.W.2d 400, 405 (Tex.App.—Corpus Christi 1984, no writ); Tex.R.App.P. 52(a). That rule notwithstanding, when an objection to evidence is properly made, prior or subsequent presentation of essentially the same evidence without objection waives any complaint regarding the admission of the evidence. *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex.1984); *Trailways*, 794 S.W.2d at 488; *see also Missouri Pac. R.R. Co. v. Huebner*, 704 S.W.2d 353, 357–58 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

In an effort to show the knowledge of the dangers of asbestos exposure that Celotex had or should have had at the time asbestos was being shipped to Tate's place of work, appellees offered Dr. Castleman's testimony. Celotex concedes that Castleman is a librarian of asbestos research and, as such, is qualified to testify about the *existence* of medical articles addressing the relationship between asbestos dust and mesothelioma. By point two, however, Celotex contends that the trial court should have excluded Castleman's testimony because Castleman is a doctor of science and not a doctor of medicine and thus not qualified to testify regarding the *contents* of any medical articles. Because co-defendant Union Carbide objected on this ground and Celotex did not, we must initially resolve a preservation question concerning the utilization of an aligned party's objections.

In trials involving multiple defendants, a party must make its own objection to the evidence if it wishes to preserve error for appeal. *Howard v. Phillips*, 728 S.W.2d 448, 451 (Tex.App.—Fort Worth 1987, no writ); *Wolfe v. East Texas Seed Co.*, 583 S.W.2d 481, 482 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ dism'd); *see also* Tex.R.App.P. 52(a). Under this general rule, Celotex would have failed to preserve its complaint. However, during a hearing on pretrial motions, Celotex requested a ruling from the trial court that one defendant's objection preserves error for all defendants.

Under Tex.R.Civ.Evid. 611(a)(2), a trial court is given the authority to exercise reasonable control over the presentation of evidence at trial, so as to avoid the needless consumption of time. We find that by exercising its discretion under Rule 611, a trial court may properly grant such a request.

Without exception from appellees, the trial court expressly ruled that one objection preserved error for all. Armed with this pretrial ruling, Celotex is free to rely on any defendant's objection, just as if it was its own.

■ Turning to the specifics of Castleman's testimony, we find that prior to his taking the stand, the trial court denied Celotex' motion to exclude, but it granted Celotex' motion to limit his testimony to matters concerning the existence of the medical articles, as distinguished from testimony concerning the interpretation of the contents of the articles. Celotex' specific complaint involves Castleman's subsequent testimony whereby he: (1) rendered opinions on the ability to discover the hazards of asbestos before 1970; (2) testified to what the medical literature revealed; and (3) testified to what medical doctors thought about asbestos, by selectively reading portions of the articles.

Castleman testified on two consecutive days. On the first day, Union Carbide properly objected to his testimony insofar as it related to those three areas. After Union Carbide had settled on the second day, Castleman again testified on the ability to discover the hazards, testified to what the medical literature revealed and read portions of the articles. No party objected. As we stated earlier, when an objection to evidence is properly made, the subsequent presentation of essentially the same evidence without objection waives any complaint regarding its admission. Celotex waived its complaint. Point two is overruled.

By its first point of error, Celotex claims that the trial court erred by allowing Dr. Everett Dillman, an economist, to testify regarding the value of guidance, counsel, love, affection, intangibles, and the proper amount of punitive damages to award. Celotex' argument is twofold: first, expert testimony is not required for these subjects, and second, if expert testimony is required, Dillman is not qualified to render an opinion.

Problems regarding Dr. Dillman's testimony are familiar to this Court. *See Seale*

*v. Winn Exploration Co., Inc.*, 732 S.W.2d 667 (Tex.App.—Corpus Christi 1987, writ denied). In *Seale*, relying on Tex.R.Civ. Evid. 702, we held that Dillman's testimony regarding the value of the loss of love, affection, companionship, and society as between a parent and child, based on the hourly average income of a psychiatrist, was properly excluded, as Dillman possessed no special knowledge which jurors do not possess in deciding this issue. *Seale*, 732 S.W.2d at 669. We also found, however, that the trial court did not err by admitting Dillman's general testimony regarding the computation of present dollar value because it was not based upon a specific figure. *Id.*

■ Celotex specifically complains of Dillman's testimony inasmuch as he allegedly suggested the following damages:

(1) "intangibles" (love and affection): past at $15,000.00, future at $600,-000.00;

(2) "guidance and counsel" (for Tate's son): past at $130,000.00, future at $290,000.00;

(3) punitives at $2,500,000.00.

With regard to the first and third categories, Dillman explained to the jury how to compute the present dollar value of these damages based upon *hypothetical* figures. He did not, as Celotex claims, assign a particular value to these damage elements. Thus, under the circumstances, Dillman's testimony fell squarely within the requisites of Rule 702 and was properly admitted.

■ On the other hand, regarding the second category, Dillman calculated the value of past and future "guidance and counsel" damages by basing his *specific* figures on the average earnings of a teacher. This testimony was improperly admitted because it indicated that the value of "guidance and counsel" is commensurate to the hourly rate of a teacher. In *Seale*, Dillman possessed no special knowledge which the jurors did not possess in arriving at any specific values. So it is in the case at bar.

In addition to asserting the propriety of Dillman's testimony, appellees claim that Celotex failed to preserve error by not objecting to the admission of the evidence. As we stated earlier, by virtue of the trial court's ruling regarding the defendants' objections, Celotex is free to rely upon its co-defendant's timely and specific objection.

■ Although we find that the trial court erred by admitting Dillman's testimony on the value of "guidance and counsel," the admission of the testimony must have been reasonably calculated to cause and probably cause the rendition of an improper judgment, thus warranting reversal. *See Boothe v. Hausler,* 766 S.W.2d 788, 789 (Tex.1989); Tex.R.App.P. 81(b)(1).

The jury awarded Tate's son $25,000.00 (past) and $200,000.00 (future) for loss of his father's advice and counsel. These figures are well below those suggested by Dillman, i.e., $105,000.00 less for past loss and $90,000.00 less for future loss. In its brief, Celotex wholly fails to address the harm issue, namely, how the improper admission of Dillman's testimony was reasonably calculated to cause and probably did cause the rendition of an improper judgment. That is the test. Celotex' unsupported statement that "it was highly prejudicial, and requires reversal for a new trial" is insufficient. In fact, the jury awarded a significantly lower amount than Dillman suggested. Celotex has failed to show any prejudice, and, when viewing the award as a whole, we are persuaded that the admission of the testimony probably did not have a discernable effect upon the jury's assessment of the entire case; it was not calculated to cause the rendition of an improper judgment. Point two is overruled.

By its third point of error, Celotex argues that there was no evidence or, in the alternative, insufficient evidence to support the jury's finding that Tate was exposed to and suffered injury from Philip Carey Manufacturing Company products.[1] When considering a "no evidence," "insufficient evidence," or "against the great weight and preponderance" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456 (Tex.1985); *Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400 (Tex. 1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error,* 38 Texas L.Rev. 361 (1960).

■ With regard to Celotex' challenge to the evidence supporting the jury's finding that Tate's injury was proximately caused by his exposure to asbestos, the evidence adduced at trial readily supports such a conclusion. The medical evidence confirmed that inhaling asbestos dust in industrial conditions, even with relatively light exposure, can produce mesothelioma. The evidence further revealed that mesothelioma, as with other asbestos related diseases, is difficult to diagnose in its early stages because there is a long latency period between initial exposure and apparent effect. Both the latency period as well as the necessary intensity of exposure varies according to individual idiosyncrasy. Tate's surgeon testified that he believed that Tate's mesothelioma was proximately caused by exposure to asbestos. More specifically, Tate's pathologist testified that Tate's mesothelioma was proximately caused by exposure to chrysotile asbestos fibers. Sufficient evidence supports the jury's finding.

■ Next, we turn to a review of the evidence supporting the jury's finding that Tate was exposed to Philip Carey asbestos products at the Acme plant. A fundamental principle of traditional products liability law requires the plaintiff to prove that the defendants supplied the product which caused the injury. *Gaulding v. Celotex Corp.,* 772 S.W.2d 66, 68 (Tex.1989); *see*

1. As we will discuss in more detail under Celotex' sixth and eleventh points of error, Celotex acquired Philip Carey Company in 1972. For present purposes, sufficient evidence of exposure to and injury from Philip Carey products will satisfy appellees' burden.

*also Borel v. Fibreboard Paper Prod. Corp.,* 493 F.2d 1076, 1094 (5th Cir.1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974); *Armstrong Rubber Co. v. Urquidez,* 570 S.W.2d 374, 376 (Tex. 1978).

Celotex relies primarily upon *Gaulding* for the proposition that a plaintiff's failure to establish each possible asbestos source to which he was exposed defeats his cause of action. Celotex' reliance is misplaced. In *Gaulding,* the plaintiffs alleged that the decedent's mesothelioma was caused by exposure to an asbestos-containing board used to build a vanity cabinet in her home. The plaintiffs could not establish who manufactured the asbestos board. Consequently, they named, as defendants, five companies who allegedly "dominated the market of asbestos-containing wallboard." The Court specifically discussed several theories of collective liability and, after finding that none of the theories applied to the facts of the case, held in favor of the defendants.

Of particular interest, under our facts, is the Court's discussion of one theory, alternative liability:

> Under this theory of liability ... when independent acts of negligence are simultaneously committed by two or more tortfeasors and only one act results in injury, the plaintiff is relieved of the burden of proof. The burden shifts to the defendants to exculpate themselves. A crucial element to alternative liability is that *all* possible wrongdoers must be brought before the court.

*Gaulding,* 772 S.W.2d at 69 (citations omitted). In *Gaulding,* the Court did not apply the law of alternative liability because the plaintiffs conceded that they did not join all possible tortfeasors as defendants. The present case is distinguishable. The *Gaulding* Court relied upon the Restatement (Second) of Torts § 433B(3) (1963) (emphasis ours) which states:

> Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff *by only one of them,* but there is uncertainty as to which one has caused it, the burden is

upon each such actor to prove that he has not caused the harm.

In *Gaulding,* the injury could only have been caused by one defendant, the manufacturer of the asbestos board. Conversely, in the present case, Tate's mesothelioma was not necessarily caused solely by *one* defendant's product. The evidence reflects that Union Carbide, Johns–Manville, and Philip Carey all supplied raw asbestos to the Acme plant while Tate was working there and being exposed. Therefore, we believe the Restatement (Second) of Torts § 433B(2) (1963) better states the rule applicable to our facts:

> Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.

Thus, when a defendant has in fact caused harm to the plaintiff, he may not escape liability merely because the harm he has inflicted has combined with similar harm inflicted by other wrongdoers. *See* Restatement (Second) Torts § 433B(2) comment d (1963). If there was sufficient evidence presented by appellees showing that Carey supplied *any* of the asbestos to which Tate was exposed, then appellees have adequately met their burden of proof.

As previously discussed, the medical evidence demonstrates that it is difficult to determine exactly which exposure to asbestos dust is responsible for a resulting asbestos-related disease. It is thus impossible, as a practical matter, to determine with absolute certainty which particular exposure to asbestos dust resulted in Tate's mesothelioma.

Charles Lenhardt, a research and products development manager for Georgia Pacific (the third in a line of companies that ran the Acme plant while Tate was employed there), testified that raw chrysotile asbestos was supplied by Johns–Manville, Philip Carey, and Union Carbide for use at the Acme plant, during the time that Tate

was working there.[2] In addition, Elmer Lumen, a former employee at the Acme plant during the time that Tate worked there, testified that he recalled the name "Carey" printed on the bags of asbestos, the same bags that were unloaded off the boxcars and ultimately emptied into the mixer. This was strong circumstantial evidence upon which the jury could properly rely to find that Tate was exposed to Philip Carey asbestos. Furthermore, the force of evidence against a party, even if slight, is greatly increased by the party's failure to rebut it when the means of rebuttal are obviously at hand. 35 Tex.Jur.3d § 142. Celotex failed to offer any evidence tending to show that Philip Carey did not supply raw asbestos to the Acme plant. Appellees sustained their burden; point three is overruled.

In a related point of error, Celotex' eighth, it argues that the trial court erred by submitting a jury question inquiring whether Philip Carey was engaged in the business of selling raw asbestos. Celotex claims that there was either insufficient evidence or no evidence to show that Philip Carey supplied raw asbestos. Its argument is altogether untenable. First, it is fundamental that the failure to object at trial to the submission of a jury question on the ground asserted on appeal waives the complaint. *See Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex.1985); *Allen v. American Nat'l Ins. Co.*, 380 S.W.2d 604, 609 (Tex.1964); Tex.R. Civ.P. 274. No objection was made on this ground. Second, as detailed in our discussion of point three, Lenhardt testified that raw chrysotile asbestos was supplied to the Acme plant by Philip Carey. No contrary evidence was introduced. Thus, even if Celotex had preserved its complaint, there is no merit to its argument. Point eight is overruled.

Through its fifth and seventh points of error, respectively, Celotex complains of the trial court's admission of the depositions of James Tate and Charles Lenhardt. With regard to Tate's deposition, Celotex contends that because the testimony was taken in another action in which Celotex was not a party, it was inadmissible. The controlling rule of evidence regarding the admission of former testimony states:

The following are not excluded if the declarant is unavailable as a witness—

(1) *Former Testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in the course of another proceeding, if the party against whom the testimony is now offered, or a person with a similar interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Tex.R.Civ.Evid. 804(b). Thus, the declarant must be currently unavailable, and someone with similar motives must have been able to develop his testimony.

Tate died prior to trial. The deposition admitted at trial was taken in conjunction with his worker's compensation suit against his employer, Georgia Pacific. Celotex alleges that there was no motive for Georgia Pacific to question Tate about whether he was actually exposed to Philip Carey asbestos, whether he was contributorily negligent, assumed the risk, or saw asbestos warnings, or to cross-examine Tate on testimony concerning his familial relationships. An objection to Tate's deposition was made just prior to its admission when a co-defendant stated, "[Georgia Pacific] had a different motive to cross-examine the deponent than these defendants would have had."

An objection must be specific. *See* Tex.R.Civ.Evid. 103(a)(1). "A specific objection is one which enables the trial court to understand the purpose of the question and to make an intelligent ruling, affording the offering party the opportunity to remedy the defect if possible." *de los Angeles*

---

**2.** The only evidence purporting to contradict the jury's finding that Tate's fatal exposure occurred at the Acme plant was evidence that Tate served for four years on a United States Navy vessel and that it was not uncommon to have persons in Tate's position exposed to asbestos onboard the ship. Nevertheless, absolutely no evidence was produced showing that Tate was actually exposed to asbestos when he was in the Navy.

*Garay v. Texas Employers' Ins. Ass'n,* 700 S.W.2d 657, 659 (Tex.App.—Corpus Christi 1985, no writ). This rule of specificity is particularly important when evidence may be admissible in part because if a specific objection is made, the trial court can then strike the objectionable portion. *See Speier v. Webster College,* 616 S.W.2d 617, 619 (Tex.1981).

In the present case, Tate's deposition was clearly admissible, if not in full, certainly in part. Hence, the objection was insufficient, and Celotex has waived its point.[3] Point five is overruled.

■ Regarding Lenhardt's deposition, in which he testified that Philip Carey supplied raw asbestos to the Acme plant, Celotex argues that appellees failed to show that Lenhardt had personal knowledge of those facts. Lenhardt testified that he began working in 1951 as a chemist for the owners of the Acme plant, then from 1960 to 1967, he was a "group leader," and finally from 1967 on, a research and product development manager. He testified that "[t]o the best of [his] information," raw chrysotile asbestos was supplied to the Acme plant by Philip Carey Company. Lenhardt also testified that he had personally observed the bags of raw asbestos being opened, measured, and mixed at the Acme plant. There is nothing in the record indicating that he did not have personal knowledge of these facts.

> A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself.

Tex.R.Civ.Evid. 602.

Celotex cites *Campbell v. Fort Worth Bank & Trust,* 705 S.W.2d 400 (Tex.App.—Fort Worth 1986, no writ), for the proposition that a statement based upon "the best of [one's] knowledge," constitutes no evidence of any of the facts asserted. Because *Campbell* is a summary judgment

case, it does not control here. Indeed, the court specifically held, "[s]uch statements do not constitute factual proof *in a summary judgment proceeding."* *Campbell,* 705 S.W.2d at 402 (citation omitted) (emphasis ours). There is good reason for such a result. In a summary judgment proceeding, there is no opportunity for the opposing party to cross-examine the affiant, unless the affiant is a party to the suit and deposed. Thus, the basis of an affiant's personal knowledge may go untested. Conversely, in a trial on the merits, the opposing party is given the opportunity to impeach the foundation of a witness' personal knowledge, either through cross-examination or on voir dire.

Although no evidence was introduced to show the exact source of Lenhardt's knowledge, the trial court could properly infer, from Lenhardt's occupation and observations, that he had personal knowledge of the facts. At a minimum, when appellees put forth some evidence of personal knowledge, it then became Celotex' burden to rebut that evidence. Celotex did nothing. Therefore, the trial court did not err by admitting his testimony. Point seven is overruled.

Through its sixth and eleventh points of error, Celotex contends that the trial court erred when it entered judgment against Celotex because there was neither evidence nor jury findings of Celotex' liability, as a successor corporation, for the acts of its predecessor, Philip Carey Manufacturing Company.

■ In Texas, a successor corporation is not responsible or liable for any liability or obligation of an acquired corporation unless the successor has expressly assumed such liability. *See Mudgett v. Paxson Mach. Co.,* 709 S.W.2d 755, 758 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); Tex.Bus.Corp.Act Ann. art. 5.10 B(2) (Vernon Supp.1990). At trial, no evidence was introduced to show whether Celotex assumed the liabilities of Philip Carey. The sole evidence of successorship was

---

**3.** We note that, in addition to the above-quoted objection, a co-defendant added, "And I would like to adopt my earlier written motion." No

such motion is contained in the appellate record. Clearly then, it cannot be relied upon to supplement the inadequate oral objection.

merely that Celotex acquired Philip Carey in 1972. Furthermore, all of the evidence supporting appellees' cause of action relates exclusively to the actions of Philip Carey and the sale and distribution of Philip Carey products. The jury findings likewise directly implicate the liability of Philip Carey, not Celotex.

Tex.R.Civ.P. 94 requires a party to set forth affirmatively in his responsive pleadings any matter constituting an avoidance of claims set forth in preceding pleadings. In response to appellees original petition which named Celotex and not Philip Carey, Celotex simply filed a general denial. Thus, the issue presented is whether a defense of "successorship liability" is a matter constituting an avoidance, requiring it to be specifically pled. We believe that it is.[4]

An avoidance of a claim is any matter defeating the underlying cause of action, in whole or in part. *See Moulton v. Alamo Ambulance Serv., Inc.,* 414 S.W.2d 444, 448 (Tex.1967). Further, when supported by the evidence, an affirmative defense entitles the pleader to jury questions embodying the defense because, unlike a general denial which puts the plaintiff to his proof on all elements of the cause of action, an affirmative defense introduces an independent reason why the plaintiff should not recover. *See id.* at 448–49.

We find that Celotex' defense of successor liability comprises an independent ground for the denial of appellees' cause of action since the defense in no way rebuts any factual propositions comprising the cause of action. *Cf. Young v. Clark,* 732 S.W.2d 20, 21–22 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). We recognize, however, that an affirmative defense may be tried by consent, even if not properly pled. *Fidelity & Casualty Co. of N.Y. v. Central Bank of Houston,* 672 S.W.2d 641, 646–47 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). Nonetheless, to try such a defense by consent,

an appropriate jury question must have been submitted. Because no jury question was submitted, we have no finding on the issue of successor liability. By its failure to plead non-liability as a successor corporation, Celotex has preserved nothing for review. *See R.I.O. Sys., Inc. v. Union Carbide Corp.,* 780 S.W.2d 489, 492 (Tex. App.—Corpus Christi 1989, writ denied). Points six and eleven are overruled.

Celotex' remaining points of error concern several matters relating to the jury's award of punitive damages. By point four, it argues that the trial court erred by submitting the following instruction (emphasis ours):

'Exemplary Damages' means an amount that you may in your discretion award as an example to others for the good of the public, *in the interest of society at large to deter the commission of similar wrongs and as a penalty by the way of punishment,* in addition to any amount that you may have found as actual damages.

*Additionally, when assessing exemplary damages, you may consider such things as compensation for inconvenience, attorney's fees, expenses of litigation, and other expenses not recoverable as actual damages.*

Celotex' point of error contains two arguments: (1) that the emphasized language in the first paragraph constitutes a comment on the weight of the evidence, and (2) that the second paragraph does not conform to Texas law regarding the recovery of exemplary damages. Although the first argument is included in the point of error, Celotex has abandoned it by completely failing to discuss it or allude to it in its brief. *See* Tex.R.App.P. 74(f).

Regarding the second complaint, a party objecting to the charge must point out distinctly the matter to which he objects and the grounds of his objection, or he has waived complaint as to that matter. *Wilgus v. Bond,* 730 S.W.2d 670, 672 (Tex.

---

**4.** We must emphasize that Celotex urges a defense based upon article 5.10 B. It is neither asserting that it was sued in the wrong capacity (requiring a verified denial under Tex.R.Civ.P. 93(2)) nor asserting that it was the wrong defendant (requiring nothing more than a general denial).

1987); *Aero Energy*, 699 S.W.2d at 822; *Corpus Christi Bank & Trust v. Roberts*, 587 S.W.2d 173, 185 (Tex.Civ.App.—Corpus Christi 1979), *modified on other grounds*, 597 S.W.2d 752 (Tex.1980); Tex.R.Civ.P. 274. At trial, Celotex objected solely on the ground that the instruction "is not in conformity with Texas law." Such an objection is manifestly inadequate and preserves nothing for review. *See Castleberry v. Branscum*, 721 S.W.2d 270, 276–77 (Tex.1986). Point four is overruled.

By its ninth and tenth points, Celotex contends that the jury's award of $1,000,000.00 in punitive damages violates the Excessive Fines and Due Process Clauses of the Texas Constitution and the Due Process Clause of the United States Constitution. We dispose of Celotex' "excessive fines" argument first.

### Excessive Fines

■ In *Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, — U.S. —, 109 S.Ct. 2909, 2912, 106 L.Ed.2d 219 (1989), the United States Supreme Court held that the Excessive Fines Clause of the Eighth Amendment to the United States Constitution does not apply to awards of punitive damages in cases between private litigants. This Court has likewise held that the Eighth Amendment is inapplicable to an award of exemplary damages. *See Underwriters Life Ins. Co. v. Cobb*, 746 S.W.2d 810, 817 (Tex.App.—Corpus Christi 1988, no writ). The Texas excessive fines provision states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted." Tex. Const. art. I, § 13. The language of the Texas clause is identical to that of its federal counterpart, the Eighth Amendment.

Celotex cites *Pennington v. Singleton*, 606 S.W.2d 682, 690 (Tex.1980), in which the Court stated, " 'Fines' as used in article I, Section 13 includes civil penalties." However, in that case, the appellant was challenging the constitutionality of the Texas Deceptive Trade Practices Act (currently Tex.Bus. & Com.Code Ann. §§ 17.41–17.63 (Vernon 1987)), specifically § 17.50(b)(1) which provides for treble damages. In the Court's analysis of whether this provision met constitutional muster, it examined situations in which civil fines were *legislatively* authorized, i.e. involving state action, as opposed to the *common law* punitives at issue here. In the absence of any state action, we find that the excessive fines provision of the Texas Constitution does not apply to an award of common law punitive damages as between two private civil litigants.

### Due Process

■ Celotex complains that the multiple awards of punitive damages for a single course of wrongful conduct violates constitutional due process rights. Particularly, Celotex argues that it is repeatedly being assessed punitive damages for the same conduct, and as a result, the cumulative effect of the punitive damage awards punishes the company far beyond what any jury, including the present one, intended. Hence, Celotex is not contesting the specific amount of the jury's award but is contesting the cumulative effect when it is considered with prior awards.

By way of a motion for new trial, Celotex presented the affidavits of various corporate officers indicating that, as the result of prior litigation, the company has paid approximately $10,000,000.00 in punitive damage awards in suits arising out of the same tortious conduct as the case at bar. Celotex presents a compelling argument, namely, that if a jury wishes to punish the company, it should do so not inadvertently but intentionally, by knowing the combined effect of its verdict with past verdicts. Then and only then, Celotex argues, could overlapping damage awards which seem to violate the fundamental fairness concept of constitutional due process be avoided.[5]

---

**5.** We note, incidentally, that class certification, which has been used in other mass tort litigation, is not available as a limitation on punitive damage awards in asbestos litigation. *See In re School Asbestos Litigation*, 789 F.2d 996 (3d Cir.), *cert. denied*, 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986).

Celotex' argument is founded upon the notion that punitive damages are *not intended to compensate the injured party* but rather to punish the tortfeasor whose wrongful action was intentional or malicious and to deter similar extreme conduct. Unfortunately for Celotex, that is not the law in this State. The Texas Supreme Court's view regarding the function of punitive damage awards differs substantially. In *Hofer v. Lavender,* 679 S.W.2d 470, 474–75 (Tex.1984), the Court held that the purpose of punitive damages includes: punishment, deterrence, *reimbursement for losses too remote to be considered as elements of strict compensation, and compensation for inconvenience and attorney's fees.* As a matter of fact, when defining "exemplary damages" for the jury, the trial court expressly inserted these *Hofer* components.

Regardless of how compelling Celotex' argument might be on the question of due process and limits on punitive damage awards in mass tort litigation, we are constrained to follow *Hofer,* the current statement from the Supreme Court. Consequently, absent separate findings on each constituent element of the jury's punitive damage award, this Court is powerless to review it. We simply cannot divine, for example, what amount the jury has awarded for punishment and what amount it has awarded for inconvenience or attorney's fees. Therefore, we find that under *Hofer,* this Court has not been presented with a jury award capable of review on the grounds asserted. Points nine and ten are overruled.

The judgment of the trial court is in all things AFFIRMED.

BENAVIDES, J., concurs.

BENAVIDES, Justice, concurring.

I concur with the majority that *Hofer v. Lavender,* 679 S.W.2d 470 (Tex.1984), strikes at the underpinnings of Celotex' due process argument thus preventing a proper review; however, unlike the majority, I would not categorize Celotex' due process argument as compelling and would also reject it on other grounds. Celotex'

argument is based upon the jury's inadvertent (rather than knowing and intentional) assessment of punitive damages, allegedly subjecting it to a cumulative damage award. I find this contention unpersuasive.

At trial, Celotex was free to inform the jury of prior punitive damage awards assessed against it. Celotex chose not to do so. It, and it alone, made a calculated decision to keep this information from the jury. Now, on appeal, Celotex complains of the jury's inadvertence—the same inadvertence that it created at trial. Because Celotex had the means and opportunity before the factfinders to combat the cumulative effect of another punitive damage award and did not avail itself of this opportunity, I would find its complaint without merit. If the jury room was dimly lit, it was because Celotex saw to it that the lights were not turned on.

In all other respects, I join in the opinion of the majority.