SUNRISE ACRES, INC., Appellant,

v.

FORD–WEHMEYER, INC., Appellee.

No. 6060.

Court of Civil Appeals of Texas, Waco.

April 17, 1980.

Rehearing Denied May 29, 1980.

Terral R. Smith, Schaubhut & Smith, Austin, for appellant.

James O. Guleke, II, Daugherty, Kuperman, Golden, Carlisle & Morehead, Austin, for appellee.

HALL, Justice.

In August, 1974, appellant Sunrise Acres, Inc., solicited bids for the construction of a water distribution system in appellant's subdivision in Travis County, Texas. The bid proposal forms, prepared and distributed by appellant's engineer, indicated the nature of the job, the specifications for the job, and the types and quantities of the materials to be installed. Appellee Ford-Wehmeyer, Inc., submitted a bid of $31,-779.40. This sum was obtained by estimating the cost of thirteen items required for the project, which were separately set forth on the bid proposal forms and adding them for the total job estimate. Appellee's bid was accepted by appellant in October, 1974, and a written contract was executed by the parties on the basis of the bid proposal. Although appellant's subdivision was not within the City of Austin, it was within the City's extraterritorial jurisdiction, and the contract expressly provided that it was subject to the City's standard specifications and that the contractor was not entitled to final payment until the project had been accepted by the City.

The project was timely completed by appellee, and it was approved and accepted by appellant and the City of Austin. Upon conclusion of the project, appellee presented a bill to appellant which was $845.00 in excess of the total contract price. Appellee claimed that $752.00 of this excess resulted from installation of cast iron fittings according to City's specifications, and that the remaining $93.00 was for additional ductile pipe. Appellant paid appellee the original contract price of $31,779.40, but it refused to pay the additional $845.00. Appellee then perfected a mechanic's and materialman's lien against the subdivision property for its claim of $845.00.

This lawsuit originated as an action by appellant against appellee to have the mechanic's and materialman's lien declared void and set aside. After the suit was filed, appellant procured and filed an indemnity bond against the lien, under the provisions of Article 5472c, Vernon's Tex.Civ.St. Merchants Mutual Bonding Company was surety on the bond. Thereafter, appellee filed a counterclaim against appellant and a third-party action against Merchants Mutual for recovery of the $845.00. Appellee also sought the recovery of reasonable attorney's fees provided for in Article 5472c. Appellant and Merchants Mutual answered appellee's suit with a general denial.

The case was heard by the court without a jury. Judgment was rendered on July 7, 1978, awarding appellee recovery against appellant and Merchants Mutual, jointly and severally, for $970.57, representing the $845.00 claim and $125.57 pre-judgment interest thereon, and attorney's fees in the following amounts: $1,750.00 for the trial of the case, an additional $1,000.00 if the case was appealed to the Court of Civil Appeals, and an additional sum if an appeal was made to the Supreme Court of Texas.

Appellant Sunrise Acres, Inc., perfected this appeal from the judgment, but Merchants Mutual did not appeal. The appellate record contains express findings of fact and conclusions of law on the essential elements of appellee's case. The findings and conclusions support the judgment. The record also contains a complete statement of facts.

In its brief, appellant sought reversal of the $845.00 awarded on appellee's original claim on these grounds:

1.  The record established as a matter of law that the project contract was a "lump sum" contract between the parties for $31,779.40.

2.  Appellee, by its conduct, waived its right to collect additional compensation.

3.  Appellee breached the contract terms by failing to secure appellant's ap-

proval in advance for any materials in excess of the contract specifications.

4. The contract expressly precluded claims for payment for extra materials in the amount claimed by appellee.

The parties devoted a large part of their briefs to the question of whether the contract was a "lump sum" contract or a "unit price" contract. However, on oral argument, appellant expressly abandoned its contention that the contract was for a "lump sum", and thereby removed that issue from our consideration.

■ The defense of waiver is not available under a general denial, but must be specially pleaded under Rule 94, Vernon's Tex.Rules Civ.Proc. Appellant did not plead waiver, and it may not raise the defense for the first time on appeal as a ground for reversing the judgment. *Young v. De La Garza*, 368 S.W.2d 667, 671 (Tex. Civ.App.—Dallas 1963, no writ). Accordingly, appellant's contention 2 is overruled.

■ Appellant's contention number 3 that appellee was required to secure appellant's prior approval for any materials in excess of the contract specifications is based upon the following provision set forth in the contract under "General Specifications":

3. *Proposal quantities are for bidding purposes only.* Final payment will be made only for work performed and accepted. The Contractor shall verify quantities before ordering materials.

It is our view that this complaint is without merit. There is an abundance of evidence that the contract was a "unit price" contract. Appellant's engineer, who was appellant's primary witness, admitted that fact. He also testified that a variance of not more than 3%, up or down, between the bid proposal and the actual cost of completion of a project of the nature and magnitude of the one in question was not uncommon and was accepted in the industry. Because of those circumstances (the "unit price" contract, and the possibility of the final need of more or less work or materials) contractual provision number 3, above, and others like it in the contract, emphasized that only the work actually performed and accepted would be paid for. Provision number 3 also cast upon appellee the responsibility for verifying that only the quantities of materials actually needed for the project were ordered. It says nothing about appellee securing prior verification of need from appellant. We agree with appellee that the purpose of the verification, when considered with the remainder of the provision and the other parts of the contract, was to cast upon appellee the expense of any materials ordered by it but not used in the project. Further, we agree with appellee that the evidence shows that it did not in fact use excess cast iron fittings in completing the project. The bid proposal called for six such fittings, and that was the number installed by appellee. The dispute in question arose in this manner: In the industry such fittings are ordered by the contractor from the supplier and billed by the contractor to the landowner by ton weight rather than as individual pieces. In the bid proposal forms submitted to appellee, appellant's engineer listed the six cast iron fittings at 0.5545 ton weight. Appellee bid $1,600.00 per ton which produced the extended unit price of $887.20. After the project was completed it developed that the six fittings required under the contract and actually used by appellee should have been listed at 1.0245 tons, according to the Table of Standard Weights specified in the contract, which would have produced the correct extended unit price of $1,639.20.

On the trial of the case, appellant expressly conceded that it was not questioning the extra charge of $93.00 for additional pipe.

Appellant's contention 3 is overruled.

Appellant and appellee introduced separate copies of an instrument each asserted was the true contract between them. Appellant's copy contained sixteen yellow pages placed between white pages num-

bered 5 and 6. Appellee's copy did not contain those yellow pages. Appellant's contention 4, above, is based upon its interpretation of a provision set forth on one of the yellow pages. Whether the yellow pages were a part of the contract when it was executed by appellee was a disputed issue in the evidence. The court did not expressly resolve that question in its findings of fact, and none of the parties requested an additional finding on the issue. The judgment necessarily reflects an implied finding in appellee's favor. *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609, 613 (1950).

Contention 4 is overruled.

Appellee pleaded for attorney's fees in the following amounts: $2,500.00 for preparing for trial and for trying the case; an additional $500.00 if the case was appealed to the Court of Civil Appeals, which appellee alleged in its trial pleading filed in March, 1978, "would be reasonable in the relation to the amount of work which would have to be expended"; an additional $500.00 if appellant applied for writ of error to the Supreme Court of Texas; and an additional $500.00 if the writ was granted. As we previously stated, the court allowed appellant $1,750.00 for attorney's fee through the trial of the case, an additional $1,000.00 if an appeal was taken to the Court of Civil Appeals, and the amounts pleaded for by appellant in the event of further appeal to the Supreme Court.

■ Appellant contends among other grounds attacking the court's allowances for attorney's fees that the awards are excessive. We agree.

Rule 440, Vernon's Tex.Rules Civ.Proc., vests a court of civil appeals with the authority to suggest a remittitur "if such court is of the opinion that the verdict and judgment of the trial court is excessive and that said cause should be reversed for that reason only." Although the testimony in a case may factually support the amount allowed for attorney's fees, under Rule 440 it is within the province of the court of civil appeals, in deciding whether the award is excessive, to look to the entire record in the case, to draw on the common knowledge of the justices of the court and their experience as lawyers and judges, and to view the matter in the light of the testimony, the record, and the amount in controversy. *Southland Life Ins. Co. v. Norton*, 5 S.W.2d 767, 769 (Tex.Com.App.1928, holding approved); *McFadden v. Bresler Malls, Inc.*, 548 S.W.2d 789, 790 (Tex.Civ.App.—Austin 1977, no writ); *Capitol Life Insurance Company v. Rutherford*, 468 S.W.2d 535, 537 (Tex.Civ.App. [Houston 1st] 1971, no writ).

Detailing all of the matters in the record before us bearing upon the issue of reasonable attorney's fees would unduly lengthen this opinion and would provide nothing of precedential value. We have given the parties' analyses of the evidence and their arguments based thereon careful study. In the light of the entire record, it is our view and holding that the court's awards for attorney's fees through this appeal are excessive in the amount of $1,250.00.

Appellant's remaining contentions are overruled.

The judgment will be reformed and affirmed if within 15 days from the date of this opinion appellee files a remittitur of $1,250.00. If this remittitur is not filed timely, the judgment for attorney's fees will be reversed, the issue of attorney's fees will be severed from the remainder of the case and remanded for trial (under the authority of Rule 434, Vernon's Tex.Rules Civ. Proc.), and the balance of the judgment will be affirmed.

The costs of this appeal are assessed 60% against appellant and 40% against appellee.

ON FAILURE TO FILE REMITTITUR

HALL, Justice.

Our suggested remittitur was not filed by appellee. Accordingly, that portion of the judgment awarding appellee attorney's fees

is reversed, the issue of attorney's fees is severed from the remainder of the case and remanded for retrial, and the balance of the judgment is affirmed.

The costs of this appeal are taxed 60% against appellant and 40% against appellee.