**R.I.O. SYSTEMS, INC., Appellant,**

v.

**UNION CARBIDE
CORPORATION, Appellee.**

No. 13–88–504–CV.

Court of Appeals of Texas,
Corpus Christi.

Nov. 16, 1989.

Rehearing Overruled Dec. 14, 1989.

Porchie F. Grady, Chairman of the Board of R.I.O. Systems, Brownsville, for appellant.

Neil Norquest, Keith C. Livesay, Ewers & Toothaker, McAllen, Gordon L. Briscoe, Law Offices of Gordon L. Briscoe, Harlingen, Norton A. Colvin, Jr., Rodriguez, Colvin & Chaney, Brownsville, for appellee.

Before NYE, C.J., and KENNEDY and BENAVIDES, JJ.

## OPINION

NYE, Chief Justice.

R.I.O. Systems, Inc. (R.I.O.) appeals a summary judgment favorable to Union Carbide Corporation (Union Carbide) in a suit for declaratory judgment. The suit arose from a disagreement over the rights under a letter agreement concerning a proposed sale by Union Carbide of a chemical manufacturing facility located near Brownsville, Texas.

Union Carbide and R.I.O. entered into a letter agreement dated August 25, 1986. R.I.O. maintains that the letter agreement and its amendments created an offer to purchase the plant by Union Carbide which was accepted by R.I.O. On the other hand, Union Carbide contends that the letter agreement was not an enforceable contract to sell as a matter of law.

Union Carbide's petition sought declaratory judgment that it owed R.I.O. no obligation to sell the plant by virtue of the letter agreement and that R.I.O. was not entitled to specific performance, or other right, title or interest to Union Carbide's property. R.I.O. answered with a general denial and counterclaims for legal and equitable title to the property based on the execution of the letter agreement. R.I.O. also alleged bad faith and interference of business opportunities, fraud and violation of the Texas Deceptive Trade Practices— Consumer Protection Act (DTPA). R.I.O. sought recovery of land, actual damages, and punitive damages.

Union Carbide moved for summary judgment contending that no genuine issue of material fact exists. Union Carbide alleges that based upon the supporting affidavits and the express language in the letter agreement it contains only an agreement to negotiate and excludes any obligation by either party to enter into a binding contract. Union Carbide also alleges that the letter agreement cannot be a binding agreement because it leaves open for future negotiations several material terms and includes a number of contingencies which need to be resolved before any final agreement can be reached. According to Union Carbide, the letter agreement demonstrates both an absence of an actual agreement on all material terms and an absence of all elements necessary to form a binding contract. The trial court agreed and granted summary judgment in Union Carbide's favor. The trial court ruled that the letter agreement constituted an agreement between Union Carbide and R.I.O. to negotiate exclusively with each other concerning the proposed sale of the plant, not an agreement to sell the plant. R.I.O.'s counterclaims were severed.

By points of error one through six, R.I.O. complains that the trial court erred in granting summary judgment. The movant for summary judgment bears the burden of showing that no genuine issue of material fact exists and that movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether a disputed material fact issue exists to preclude summary judgment, evidence favorable to the non-movant will be accepted as true. Every reasonable inference will be indulged in the non-movant's favor and any doubts resolved in its favor. The question on appeal, as well as in the trial court, is *not* whether the summary judgment proof raises fact issues with reference to the essential elements of a plaintiff's claim or cause of action, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact concerning one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970).

By point seven, R.I.O. claims that the trial court erred by failing to hear its special exceptions to Union Carbide's original petition for declaratory judgment *prior to the summary judgment hearing.* The trial judge set Union Carbide's summary judgment hearing for December 4, 1987. R.I.O. requested a hearing on its special exceptions to Union Carbide's original petition for December 4, 1987. The trial judge, however, never signed the order setting the hearing on the special exceptions. The December 4, 1987 hearing was postponed until December 11, 1987. During the December

11, 1987 hearing, R.I.O. asked the trial court to entertain its special exceptions. The request was refused upon objection by Union Carbide.

■ Special exceptions that are not called to the trial court's attention and on which the record does not show that the trial court acted are waived. *Texas Steel Co. v. Douglas,* 533 S.W.2d 111, 118 (Tex. Civ.App.—Fort Worth 1976, writ ref'd n.r. e.). R.I.O. had the burden to obtain a hearing to present its special exceptions to the trial court and obtain a ruling on them. R.I.O.'s failure to do so waived the error, if any.

By points of error one and two, R.I.O. contends the summary judgment was in error because a material issue of fact exists regarding whether the parties intended for the letter agreement to be an enforceable contract. Union Carbide argues that the letter agreement cannot be considered a binding agreement because it leaves open for future negotiations several material terms and contains several significant contingencies that have to be resolved before a final agreement can be reached.

Specifically, Union Carbide argues that the letter agreement reveals the absence of any agreement regarding (1) the specific assets to be sold and transferred to R.I.O., (2) the identification of assets owned by third parties located on the plant premises, (3) the allocation of costs and responsibilities for an environmental clean-up operation, (4) the purchase price to be paid by R.I.O. for the plant, and (5) the terms and conditions under which two pipelines would be made available to R.I.O. Union Carbide contends that the letter agreement contemplates the future negotiation of these terms.

The August 25, 1986 letter agreement begins:

> During our several meetings in Brownsville we discussed the major terms and conditions for Union Carbide Corporation's ("Union Carbide") proposed sale of the assets of its Brownsville chemical manufacturing facility to the R.I.O. Systems, Inc. ("R.I.O."). The sale of the Brownsville facility to R.I.O. will be subject to R.I.O. being a corporation duly organized, validly existing and in good standing under the laws of the state of its incorporation. This letter sets forth our latest understanding and supersedes all previous correspondence regarding the key elements relating to that transaction and a course of action to achieve our mutual objectives:

The document then lists terms of the proposed sale of the chemical plant.

Paragraph eleven of the August 25 letter agreement states: In consideration for the sale of assets and other agreements and actions by Union Carbide and in addition to the lease obligations assumed by R.I.O.:

> R.I.O. will pay to Union Carbide, in each of the ten years following the closing, 10% of its pretax profits associated with the operation of the Brownsville Plant, subject to the minimum amounts set forth below. *(The definition of "pretax profits" and the scope of R.I.O.'s business activities associated with such profits shall be agreed to by the parties.)* Such payments will be due and payable in the first calendar quarter following each full calendar year after the closing of the proposed transactions: (emphasis added)

| Year | Minimum Payment Amount (in M dollars) |
|------|------|
| 1 | 0 |
| 2 | 0 |
| 3 | 200 |
| 4 | 200 |
| 5 | 250 |
| 6 | 250 |
| 7 | 250 |
| 8 | 250 |
| 9 | 300 |
| 10 | 300 |
| | $2,000 |

■ According to paragraph eleven, the price to be paid by R.I.O. for the Brownsville chemical manufacturing facility equals ten percent of R.I.O.'s "pretax profits" associated with the plant's operation, subject to a specified minimum amount. According to the agreement, however, the definition of "pretax profits" *shall be agreed to* by the parties. Paragraph eleven leaves

open one of the most important considerations of the parties concerning future negotiations, i.e., the price to be paid for the Brownsville plant. This is the essence of the proposed contract and not a mere detail to be provided by the court. Where any essential term of a contract is open for future negotiations, there is no binding contract between the parties. *Gerdes v. Mustang Exploration Co.*, 666 S.W.2d 640, 644 (Tex.App.—Corpus Christi 1984, no writ); *Mooney v. Ingram*, 547 S.W.2d 314, 317 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). We hold that, as a matter of law, the letter agreement does not constitute a binding contract between R.I.O. and Union Carbide.

By point three, R.I.O. argues that the trial court erred by failing to take into consideration R.I.O.'s allegations of bad faith. R.I.O. takes the position that the summary judgment proof supporting these allegations created issues of whether Union Carbide was estopped from asserting the contract's enforceability and/or had waived its rights to deny the contract's enforceability.

■ R.I.O.'s pleadings prior to the declaratory judgment failed to allege waiver or estoppel. Waiver and estoppel are affirmative defenses which have to be pleaded. Tex.R.Civ.P. 94. R.I.O.'s failure to plead these defenses preserves nothing for our review. *Chapa v. Herbster*, 653 S.W.2d 594, 602 (Tex.App.—Tyler 1983, no writ); *Sunrise Acres, Inc. v. Ford–Wehmeyer, Inc.*, 598 S.W.2d 916, 918 (Tex.Civ. App.—Waco 1980, no writ). Furthermore, R.I.O.'s counterclaim for bad faith was severed and remains before the trial court.

R.I.O., in its fourth point of error, complains that the trial court erred in granting summary judgment based on evidence not properly before the trial court. R.I.O. points out that the trial judge's order states that the court reviewed affidavits, answers to interrogatories and requests for admissions on file; however, these documents were not attached to the motion upon which the declaratory judgment was granted.

Prior to the motion now at issue, a previous summary judgment motion was asserted and denied. The earlier motion included the August 25 letter agreement and T.T. Elgin's affidavit as attachments. However, in the second summary judgment motion no proof was physically attached to the motion. Instead, Union Carbide made reference to the first summary judgment motion and reoffered the attached affidavit in support of the second motion.

■ While the better practice is to attach all summary judgment evidence to the motion presented to the court, the rule itself states that the trial court shall consider all summary judgment evidence "on file". *Stewart v. United States Leasing Corp.*, 702 S.W.2d 288, 290 (Tex.App.— Houston [1st Dist.] 1985, no writ); Tex.R. Civ.Proc. 166a(c). To the extent that the Eastland Court of Civil Appeals' case entitled *"Corpus Christi Municipal Gas Corp. v. Tuloso–Midway Independent School District*, 595 S.W.2d 203, 204–05 (Tex.Civ.App.—Eastland 1980, writ ref'd n.r.e.)"* may disagree with this proposition, we join other courts of appeals and decline to follow this case. *See Vaughn v. Burroughs Corp.*, 705 S.W.2d 246, 248 (Tex. App.—Houston [14th Dist.] 1986, no writ); *Dousson v. Disch*, 629 S.W.2d 111 (Tex. App.—Dallas 1981, writ dism'd.). The other documents the court considered were proper summary judgment evidence since they were on file prior to the summary judgment hearing now before us. *McCurry v. Aetna Casualty & Surety Co.*, 742 S.W.2d 863, 867 (Tex.App.—Corpus Christi 1987, writ denied).

■ By this same point, R.I.O. contends that the trial court erred in granting Union Carbide's second motion for summary judgment because the trial court had previously denied Union Carbide's first motion for summary judgment. We disagree. Once a summary judgment motion has been filed and denied, the judge that denied the motion or the judge to whom the case has been transferred may change or modify the original order, in that a denial of the motion is interlocutory. *Lopez v. State*, 678 S.W.2d 197, 199 (Tex.App.—San Antonio

1984, no writ); *Bachman Center Corp. v. Sale,* 359 S.W.2d 290, 291–92 (Tex.Civ.App. —Dallas 1962, writ ref'd n.r.e.); *see also Anderson v. Bormann,* 489 S.W.2d 945, 947 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.).

R.I.O. also argues that the trial court erred in granting summary judgment because T.T. Elgin's affidavit is defective. Elgin, a Union Carbide executive who was involved in the negotiations with R.I.O. concerning the proposed sale, gave an affidavit in support of Union Carbide's summary judgment motion. However, Elgin's affidavit was not instrumental in our determination that the August 25 letter agreement did not constitute a binding contract. Therefore, we need not address this complaint.

By point five, R.I.O. complains that the trial court erred in cancelling its lis pendens notice because (1) Union Carbide failed to follow the statutory requirements for cancelling the lis pendens notice, and (2) Union Carbide failed to plead or prove the facts necessary to cancel the lis pendens notice. The trial court in rendering summary judgment favorable to Union Carbide, cancelled the lis pendens notice filed by R.I.O. We hold that the trial court did not err in cancelling R.I.O.'s lis pendens notice.

Tex.Prop.Code Ann. § 12.007(a) (Vernon 1984), authorizes the filing of a lis pendens notice *during the pendency* of any suit or action involving the title of real estate or in a suit which seeks to establish any interest or right therein. *See Rio Delta Land Co. v. Johnson,* 475 S.W.2d 346, 350 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n.r.e.). In the instant case, Union Carbide's declaratory judgment sought a determination whether R.I.O. had any right, title or interest in Union Carbide's property. In granting summary judgment favorable to Union Carbide, the trial court adjudged that R.I.O. has no right, title or interest in the subject property owned by Union Carbide. Where a final judgment is

had on the merits of a suit or action involving the title of real estate or in a suit which seeks to establish any interest or right therein, a lis pendens notice is no longer necessary. *Ingrum v. Ingrum,* 555 S.W.2d 553, 555 (Tex.Civ.App.—San Antonio 1977, no writ); *see also Johnson,* 475 S.W.2d at 350.

By point six, R.I.O. argues that the summary judgment is defective because it constitutes an injunctive order without meeting any of the necessary criteria to establish a right to injunctive relief. R.I.O. takes the position that the order cancels R.I.O.'s lis pendens notice and prohibits R.I.O. from seeking judicial relief to preserve its rights to the BND leasehold interest.[1] In order to be entitled to this relief, R.I.O. contends that Union Carbide would have the burden to meet all the criteria required in order to obtain a temporary and permanent injunction. We disagree.

The functions of an injunction are to restrain motion and to enforce inaction. *Boston v. Garrison,* 256 S.W.2d 67, 70 (Tex.1953). Here, the trial court's cancellation of the lis pendens is not injunctive. The trial court's order neither compels anyone to do nor prohibits anyone from doing anything. Furthermore, no act or omission of R.I.O. could violate this order and result in a contempt penalty. By cancelling the lis pendens notice, the order merely removes a cloud on Union Carbide's title. All of R.I.O.'s points of error have been considered and are overruled.

The judgment of the trial court is AFFIRMED.

---

1. Paragraph three of the letter agreement provides: "Union Carbide will assign to R.I.O. Union Carbide's rights under the lease agreement between Union Carbide and the Brownsville Navigation District of Cameron County, Texas, ("BND") covering the property on which the Brownsville Plant is located ("Lease Agreement")."